May it please the Court, Gia Kim appearing on behalf of Petitioner Appellant Wilson Ortega. I'd like to reserve two minutes of my time for rebuttal. Mr. Ortega's claim of ineffective assistance of counsel with respect to the admission of gang evidence at his trial presents a threshold question as to whether head pedefran supplies, which I'll address first before turning to the merits. So as for the standard of review, the question is whether federal courts, civic and habeas, what they should do when faced with a lower state court decision that gives reasons, albeit brief reasons here, that is followed by summary erroneous. So the fact that it is undisputedly erroneous, that it was an incorrect applied procedural bar, wouldn't that be strong evidence that the California Supreme Court considered the merits? Your Honor, I would say at most that that would be some evidence. Well, wasn't this a situation, which you never mention in your briefs as I recall, in which there were a whole bunch of claims made, most of which actually should have been done in the appeal? So it wasn't flatly erroneous. It was erroneous as to this particular claim, but not as to the petition as a whole. Yes, Your Honor. It was a pro se petition, and as this Court can see, there is a welter of claims. There are attachments. There are some of them. I mean, one distinct possibility is this just got lost in the shuffle. Yes, Your Honor. I appreciate Judge Berzon answering your question for you, but nonetheless, may I get back to my question? In this particular case, there's no question there was an incomplete applied procedural bar. No question, incorrect. And at that point, the California Supreme Court's no dummy. California Supreme Court would know that it's not correct, and we have case law that suggests that that would give strong evidence that they considered the merits. Now, why do I just ignore that? Your Honor, again, I would say that Wilson v. Sellers, on which the State relies here, at most says that the unreasonableness, if any, of the lower State court decision is some evidence, and that it may go some direction toward meeting ill strong evidence presumption, which that case, Wilson v. Sellers, does leave in place. And I think the procedural rulings, on the same footing as unreasonable decisions on the merits, the whole premise of habeas, and even under AEDPA, is that sometimes State courts do get things wrong. Sometimes under AEDPA, the lower State court decision is erroneous to the point of unreasonableness. When that happens, this court and other courts sitting in habeas still looks through to that lower State court decision. All that happens is that AEDPA deference is removed. I understand the procedure, but I'm saying what you're suggesting is that it was so wrong procedurally that it's obvious to everyone, and yet you're saying the California Supreme Court nonetheless relied on it. That's your argument. Yes, Your Honor, because the Supreme Court has created the presumption in Ilse just for this reason. And I think what Ilse shows, and that the line of cases following it, is that presumptions matter, and that while the California Supreme Court did order an informal response on the merits. So when they want to signal that their interest in the merits, they know how to do so. Let me ask you, was there full briefing on the issue before the California Supreme Court, by both sides? No, Your Honor. At each level, at the Superior Court, at the California Court of Appeal, and at the California Supreme Court, it was only the petition file. There was no order to show cause. There was no responsive briefing by the State at all in any court. But the petitioner put forth his best arguments. Yes, Your Honor, and he attached, as the procedure has it, the decisions of the lower courts. And although California has this original habeas petition system, the Supreme Court has said that that is akin to appellate review in other systems. It would be helpful to get to whether this makes any difference in this case. I mean, ultimately, what we're arguing about is whether it's AEDPA review or de novo review. And that only matters if it matters to the merits. Yes, Your Honor. If I could turn to the merits, I would like to focus on prejudice, since the State has not argued against our deficient performance claim. So, as to prejudice, the gang evidence that came in, that the trial counsel did not object to, was evidence regarding predicate offenses by other North Hollywood boys gang members. There were two of those. The first was an attempted murder. The second, which I'd like to focus on, is a murder. But how is any of this relevant? I mean, the ultimate question here is whether this witness who had gone to the police and now, sorry, was reneging, whether to believe her first story or her second story. What does this evidence about some other crimes by some other people have to do with that? Well, in the jury instructions at ER 391, the jury was instructed they could use evidence of gang activity to determine witness credibility. And I think... But there was lots of other evidence of gang activity. And although some of it seems, you know, awfully questionable and nobody was challenging any of it, so there's all kinds of stuff about your clients involved with the gang. What difference does it make whether some other people had some other crime which was being put in for a fairly technical reason, which is that they had to demonstrate that the gang members were committing violent crimes? But it doesn't have to do directly with your client. And there's plenty of evidence of your clients involved with the gang. So, what's the problem here? Your Honor, the facts of the second case, the murder case, which involved the brother of the co-defendant of Mr. Ortega in his prior conviction and also the alleged perpetrator of the second threats incident in this case, it was also a witness intimidation case. And I think it goes to the credibility of Sarai Rodriguez and Abraham Morales because... That it was improper to admit the two convictions by the two individuals, the assault with the deadly weapon and the manslaughter conviction of the 15-year-old boy. The manslaughter was Mr. Ortega's prior conviction. Was it murder? An acted murder and a murder. A murder. No, so if they... It was not error to admit the two convictions of these two other gang members. Yes, if... It was the description only that you object to. And under guardly, that is the case in California. If it had come in that Anthony Orozco committed an attempted murder, he was a member of this gang, and Luis Vega had committed a murder and he was a member of this gang, there would be no claim here. That would have been proper. But the jury had already heard of witness intimidation threats, the jury had already heard of the defendant's prior manslaughter conviction, and that was all properly admitted. Yes, but the witness... The prior manslaughter was properly admitted, but there was no evidence that that was a witness intimidation incident. No, but the charged crime against Sarai Rodriguez was. And I think it's the relation, the way that the improperly admitted evidence echoed the evidence here. But moreover, the fact that you're arguing vigorously about the AEDPA versus GENOVA standard means that you essentially believe or are conceding that if we were applying an AEDPA standard, there's no way we could reverse. I mean, we are not conceding that. But you're close to conceding it. The Supreme Court has said that there is a deep division between those standards. So essentially your argument is that if we were viewed into GENOVA, we should find prejudice from this? Yes, Your Honor. And as I understand it, after the objections and the admission that these cases were labeled gang cases for gang affiliation, the prosecutor did not mention these matters further, correct? That is true, Your Honor. And the prosecutor didn't mention any of these facts in closing. Is that also correct? That is correct, Your Honor. And the court instructed the jury as to the effect of the gang evidence. Is that also correct? There were two instructions. The first at ER 213 just related to gang activity regarding the defendants on trial, which I don't believe would have covered this. It came up in the context of the prior manslaughter. At the end of the trial? At 391, it said it could be used to prove motive, to prove the gang enhancement, and to go to credibility, which I think is precisely the problem here, that it should not have come in and it should not have gone to the credibility. This case turned on whether the gang was so fearsome that two witnesses would come in and perjure themselves up and down, and aside from Detective Fournier's expert opinion, which is in the abstract, that other conviction provided potent evidence of the danger. Okay. You're over your time. We'll give you a minute. Good morning, Your Honors. Deputy Attorney General Gary Lieberman for Respondent. I'd first like to point out regarding the Superior Court habeas petition that Mr. Ortega filed, the ineffective assistance of trial counsel claims would not have gotten lost in the shuffle here. Well, they were first, but for every claim, he went on at some length with attachments and so on, and there were four more after that. Right. The point heading for ground one says ineffective assistance of trial counsel, failure to investigate, failure to call alibi witnesses, et cetera. Then there's a second claim, which was not for ineffective assistance of counsel. The third claim states in the point heading ineffective assistance of counsel. The fourth claim was not ineffective assistance of counsel, and then the fifth claim was. So I just think that this wasn't – it wasn't my impression that this would have got lost in the shuffle here. I just think that the trial court judge – the question is whether it was lost in the shuffle in the higher courts, the lower court having said it was an abuse of the writ, whether they got – whether they looked at every individual claim at that point with no – nothing having been filed in response. I mean, at least it matters because it wasn't ever mentioned that this was – that this was not the only claim, and it was correct as to some of the claims. Yes, Your Honor. Yes, Your Honor. But as to the ineffective assistance of counsel claims, the Dixon and Walter Rios bars could not lawfully have been imposed under any circumstances as to those claims. And my only point was that the ineffective assistance of counsel claims, to my impression, would not have gotten lost in the shuffle in the superior court. Do you think any of this matters in this case? No. But one thing I think that does matter, and I wish I would have submitted a supplemental excerpt of record, the ineffective assistance of counsel claims would not have gotten lost in the shuffle by any stretch in the California Supreme Court habeas petition that Mr. Ortega filed. And the California Supreme Court habeas petition was lodged in the district court, so it is part of the underlying record. But when I was reviewing the Wilson case and preparing for oral argument, one of the things the Wilson case says is, well, that the ill presumption can be rebutted by if an alternative reason is obvious in the record. And that made it dawned on me, not until I was preparing for oral argument, well, how obvious were these ineffective assistance of counsel claims in the California Supreme Court habeas petition? I asked the same question, and it wasn't there. And I have the petition. I can point the court to where it is in the record. But basically in the California Supreme Court habeas petition, every single claim, there was five claims, every single claim. You know, this is part of a bigger problem, which is, as you keep referring to these documents, they were, quote, lodged and often returned. I don't even know if they're in the district court. Usually they're not. My guess would be that on PACER you would probably be able to click the link. No, usually not. I can't do that. Well, we've been trying to work with the district courts about this, but it's a real problem. Because that's how I've looked up documents in the past on PACER is I click the link. Yes, documents that are in the district court record. But these state court records in habeas cases tend to be treated as exhibits and to be given back to, I don't know if that happened here or not, but often they are simply given back to the parties and then we have to go ask the parties for them. Particularly when you have a trial transcript that goes on for thousands of pages and can't make it on to an ECF system. Yes. So, in other words, I went looking for this and couldn't find it. Okay. I don't recall. I've handled this case from the get-go.  But it often happens and it's really a problem. I'm sorry, Your Honor? I don't know if it happened here or not. Yes. Anyway, that's useful to know. But nonetheless, what about talking about the merits of it? Okay. Or the prejudice question. If the court would like, just to finish that up, Your Honor, I would be happy to submit a supplemental excerpt of the record if the court would like. But I can point the court to where to find at least where this was lodged. The California Supreme Court habeas petition was part of a supplemental notice of lodging filed on November 12, 2013. And the supplemental notice of lodging was docket number 34. And the California Supreme Court habeas petition was lodge document number 20. And the only reason it was lodge document number 20 was because there was an initial notice of lodgment, which … Well, I think Judge Berzon is aptly saying, supposing it's the novel review, what's your argument? Yes, Your Honor. There's no reasonable likelihood under Strickland that the jury's learning extraneous details about two predicate offenses that were admitted to establish a gang enhancement would have affected … Well, they weren't even predicate offenses. They weren't his offenses. Excuse me, Your Honor? They weren't his offenses. That is correct. That makes it a little sui generis. Yes. They weren't his offenses. There was never any suggestion that Mr. Gortega had any involvement in those two offenses. And the jury, as Your Honor mentioned, there was lots of other gang evidence that the jury properly heard. The jury … Whether it heard it properly or improperly, it heard it. Properly heard. Properly heard. The jury properly heard … They heard it. And it wasn't objected to. Yes. Well, I think that in order to prove the gang enhancement, the jury was entitled to know that one of the primary activities of Mr. Gortega's gang is murder. The jury properly heard that. The jury … In order to establish the gang enhancement, the jury … The prosecutor had to establish that the … Mr. Gortega's gang had committed two predicate offenses for certain enumerated offenses within the statutory period. The jury properly knew, and Mr. Gortega concedes, that the jury properly knew that his gang confederates had committed murder and attempted murder. The jury, of course, knew that Mr. Gortega himself had committed a gang-related homicide. So, the mere … And I grant you that the jury should not have heard those details. But it certainly would not have made a difference in this case. And I think that even under a de novo standard review, which I don't think we get to here, the district court also found that the … That Strickland prejudice was not met. And even under de novo standard of review, it's still Mr. Gortega's burden to establish the Strickland elements. And then I would also just want to make one correction. The … The predicate offense that was referred to by counsel as a witness intimidation case, and therefore was similar to the current charge, was not a witness intimidation case. What happened in that case, as horrible as it was, was that a … Mr. Gortega's gang was extorting money from a family, and they were beating up a boy in an alley. And a 15-year-old came to the boy's rescue and was killed by the gang member. So as horrible as that is, that wasn't a witness intimidation case. And there were numerous bases to understand why Saray Rodriguez would be afraid to be forthcoming in her testimony before the court, aside from these extraneous details. Saray Rodriguez grew up in the North Hollywood Boys area. She knew about this gang. She knew that Mr. Gortega had previously committed homicide. In fact, she testified in that case, or at least gave some information in that case, which is what led to the retaliation here after Mr. Gortega was released on parole and found Saray Rodriguez walking in gang territory. During the charge defense, Mr. Gortega pointed a gun at Saray Rodriguez's head, told her that the gang had a green light on her. And then she got up and said none of it happened. She said none of that happened, and we can understand why. So in closing, I think that this court should employ the AEDPA deference standard of review because the ill presumption was clearly rebutted here. Essentially what counsel is asking this court to find is that either the California Supreme Court was unaware of or disregarded its own clearly established precedent. And just to clarify, we don't just have the unreasonableness of the lower court's decision. We have the California Supreme Court telling us repeatedly we do not apply those bars to ineffective assistance of counsel claims. So we have the patent unreasonableness. But we know that the Superior Court made a flat error. So, I mean, you're saying the California Supreme Court is smarter than the Superior Court. I'm saying that the California Supreme Court handles, as the U.S. Supreme Court has noted, a staggering number of habeas petitions every year, whereas a trial court judge, a habeas petition is not the trial court's bailiwick. And, in fact, in the trial court's order rejecting the claims on procedural grounds, the trial court doesn't even cite California Supreme Court precedent. The trial court cites a California appellate court decision, this Rheingold decision, which didn't even have to do with ineffective assistance of counsel claims per se. So, yes, the district court, excuse me, the trial court clearly got it wrong. We cannot presume that the California Supreme Court, according to the proper respect and deference it deserves, would have made the same mistake and ignored its own precedent in doing so. So, with that, I would. Okay. Thank you very much. Thank you, Your Honors. I'll give you one minute if there's anything you need to say. I don't know if you really need to say it. You're on. First of all, the predicate offense that did come in erroneously was a witness intimidation case at ER 201-02. The reason the gang member was beating up the boy in the alley is because his family had reported the gang's extortion. Second, to this court's question about the California Supreme Court and California Court of Appeal petitions, there is now a practice in the Ninth Circuit whereby they are scanned in and put on the court seal docket, so those are available at 2-26 for the Court of Appeal and 2-28 for the California Supreme Court. However, there's no material difference between the petition filed in Superior Court and those petitions, and at ER 488 in Superior Court, Mr. Ortega said, hey, I'm leaving. He says there is a difference. He says that the one in the California Supreme Court is only ineffective claims. Your Honor, I believe that they are the same claims that are being raised throughout. But the other ones weren't in there. That's what he's telling us. We'll go look. Thank you. Thank you. Thank you very much. Ortega v. Carrington is submitted, and we are in adjournment. Thank you. All rise.
judges: Berzon, N.R. Smith, Castel